Judge McMahon

08 CV 00242

Jeffrey S. Abraham (JA-2945)
Jack G. Fruchter (JF-8435)
Lawrence D. Levit (LL-9507)
**ABRAHAM, FRUCHTER & TWERSKY, LLP**
One Penn Plaza, Suite 2805
New York, New York 10119
Telephone: (212) 279-5050
Facsimile: (212) 279-3655

**Attorneys for Plaintiff**



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ZEESHAN NAYAB, Individually and On Behalf of All Others Similarly Situated, ) ) ) | **CLASS ACTION COMPLAINT** |
| Plaintiff, ) ) ) | **FOR VIOLATIONS OF** **FEDERAL SECURITIES LAWS** |
| vs. ) ) ) | |
| INTERACTIVE BROKERS GROUP, INC., ) ) ) | |
| Defendant. ) ) ) | |

Plaintiff makes the following allegations, except as to allegations specifically pertaining

to Plaintiff and his counsel, based upon the investigation undertaken by Plaintiff's counsel

(which investigation included analysis of publicly available news articles and reports, public

filings, securities analysts' reports and advisories about Interactive Brokers Group, Inc.

("Interactive Brokers" or the "Company"), press releases and other public statements issued by

the Company, and media reports about the Company) and believes that substantial additional

evidentiary support will exist for the allegations set forth herein after a reasonable opportunity

for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action brought on behalf of a class consisting of all persons other than defendant who purchased the common stock ("Common Stock") of Interactive Brokers pursuant to and/or traceable to the Company's initial public offering on or about May 4, 2007 through July 5, 2007, seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act"). This action concerns the initial public offering of Interactive Brokers which became effective on or about May 3, 2007, whose Common Stock began trading on or about May 4, 2007 and which closed on or about May 9, 2007 (the "IPO" or the "Offering").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 11 and 12(a)(2) of the Securities Act [15 U.S.C. §§77k and 77l(a)(2)].

3.      This Court has jurisdiction of this action pursuant to Section 22 of the Securities Act [15 U.S.C. §77v] and 28 U.S.C. §1331.

4.      Venue is properly laid in this District pursuant to Section 22 of the Securities Act and 28 U.S.C. §1391(b) and (c). The acts and conduct complained of herein occurred in substantial part in this District and the IPO was marketed in this District.

5.      In connection with the acts and conduct alleged in this Complaint, Defendant, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications and the facilities of the NASDAQ Global Select Market.

## PARTIES

6.      Plaintiff Zeeshan Nayab purchased shares of Interactive Brokers Common Stock, as set forth in the certification attached hereto and incorporated herein by reference, pursuant to and traceable to the Company's IPO, and was damaged thereby.

7.     Defendant Interactive Brokers together with its subsidiaries, operates as an automated global electronic market maker and broker. It specializes in routing orders, as well as in executing and processing trades in securities, futures, and foreign exchange instruments as a member of approximately 60 electronic exchanges and trading venues worldwide. The Company provides direct access trade execution and clearing services to institutional and professional traders for various electronically traded products, including options, futures, stocks, ETFs, forex, and bonds. It offers continuous bid and offer quotations on approximately 324,000 securities and futures products listed on electronic exchanges. The Company is headquartered in Greenwich, Connecticut.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

8.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of himself and all persons other than defendant who purchased the Common Stock of Interactive Brokers pursuant to and/or traceable to the Company's IPO. Excluded from the Class are defendant herein, and any person, firm, trust, corporation, or other entity in which the defendant has a controlling interest or which is related to or affiliated with the defendant, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

9.     The members of the Class are so numerous that joinder of all members is impracticable. Interactive Brokers sold 40 million shares of Common Stock in the IPO. The precise number of Class members is unknown to Plaintiff at this time but is believed to be in the thousands. In addition, the names and addresses of the Class members can be ascertained from the books and records of Interactive Brokers or its transfer agent or the underwriters to the IPO. Notice can be provided to such record owners by a combination of published notice and first-

class mail, using techniques and a form of notice similar to those customarily used in class actions arising under the federal securities laws.

10.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intends to prosecute this action vigorously.

11.    Plaintiff's claims are typical of the claims of the other members of the Class because Plaintiff's and all the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to defendant. Plaintiff does not have any interests antagonistic to, or in conflict with, the Class.

12.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

13.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    Whether the federal securities laws were violated by defendant's acts as alleged herein;

(b)     Whether the prospectus and registration statement issued by defendant to the investing public in connection with the IPO negligently omitted and/or misrepresented material facts about Interactive Brokers and its business; and

(c)     The extent of injuries sustained by members of the Class and the appropriate measure of damages.

## SUBSTANTIVE ALLEGATIONS

14.     Defendant Interactive Brokers operates as an automated global electronic market maker and broker. It specializes in routing orders, as well as in executing and processing trades in securities, futures, and foreign exchange instruments as a member of approximately 60 electronic exchanges and trading venues worldwide. On or about May 3, 2007, Interactive Brokers filed with the Securities and Exchange Commission (the "SEC") a Form S-1/A Registration Statement (the "Registration Statement"), for the IPO.

15.     On or about May 4, 2007, the Prospectus (the "Prospectus") with respect to the IPO, which forms part of the Registration Statement, was filed with the SEC, and 40 million shares of Interactive Brokers' Common Stock priced at $30.01 per share were sold to the public and began trading, thereby raising more than $1.2 billion.

16.     The IPO was a Dutch auction handled by WR Hambrecht & Co., LLC, HSBC Securities (USA) Inc., Fox-Pitt, Kelton Incorporated, Sandler O'Neill + Partners, L.P. and E*Trade Securities, LLC as placement agents (or underwriters). The Offering method differed from the traditional firm commitment underwritten public offerings. The public offering price and allocation of shares was to be determined primarily by an auction process conducted by the lead banks and other securities dealers who participated in the Offering.  Additionally, the placement agents were not required to sell any specific number or dollar amount of shares of

common stock but rather agreed to use their best efforts to obtain potential purchasers for the

shares.

17.    The Registration Statement and Prospectus contained untrue statements of

material facts, omitted to state other facts necessary to make the statements made not misleading

and was not prepared in accordance with the rules and regulations governing its preparation.

18.    The Registration Statement and Prospectus positively described the Company's

"competitive strengths" stating in pertinent part as follows:

> *Proprietary technology.* We view ourselves primarily as a technology company.
> Since our inception in 1977, we have focused on developing proprietary software
> to automate broker-dealer functions. We believe that our early and continuous
> investment in technology, as well as our overall technological capabilities,
> provide us with a significant advantage over our competition by enabling us to
> make markets profitably in financial instruments (e.g., equity options, futures,
> index options and equities) worldwide with low spreads between bid and offer
> prices, while at the same time providing our customers with the ability to effect
> trades at execution and commission costs that are among the lowest in the
> industry.

19.    The Registration Statement and Prospectus further positively described Interactive

Brokers' function as a "market maker" stating in pertinent part as follows:

> *Real-time risk management.* We operate as a market maker, not an investor. Therefore,
> our ability to generate profits is generally a function of transaction volume on electronic
> exchanges rather than volatility or the direction of price movements. We seek to calculate
> quotes a few seconds ahead of the market and execute small trades at a tiny but favorable
> differential as a result. Our proprietary pricing model continuously evaluates and
> monitors the risks inherent in our portfolio, assimilates market data and reevaluates the
> outstanding quotes in our entire portfolio each second. In our electronic brokerage
> business, our entire credit management process is automated, including real-time margin
> calls and automatic liquidation. This automated system enables us to maximize profits
> while minimizing losses typically associated with manual risk management.

20.    The statements referenced above in ¶¶18 and 19 were materially false and

misleading because they failed to disclose that the Company had suffered a material loss prior to

the closing of the IPO as a result of options market manipulation and that its proprietary system

was unable to prevent losses from such manipulation at the time of the IPO.

21.    In addition, the Registration Statement and Prospectus described losses that might

be incurred from the Company's market making activities as follows:

**We may incur material trading losses from our market making activities.**

A substantial portion of our revenues and operating profits is derived from our trading as principal in our role as a market maker and specialist. We may incur trading losses relating to these activities since each primarily involves the purchase or sale of securities for our own account. In any period, we may incur trading losses in a significant number of securities for a variety of reasons including:

- price changes in securities;

- lack of liquidity in securities in which we have positions; and

- the required performance of our market making and specialist obligations.

These risks may limit or restrict our ability to either resell securities we purchased or to repurchase securities we sold. In addition, we may experience difficulty borrowing securities to make delivery to purchasers to whom we sold short, or lenders from whom we have borrowed. From time to time, we have large position concentrations in securities of a single issuer or issuers engaged in a specific industry or traded in a particular market. Such a concentration could result in higher trading losses than would occur if our positions and activities were less concentrated.

In our role as a market maker, we attempt to derive a profit from the difference between the prices at which we buy and sell, or sell and buy, securities. However, competitive forces often require us to match the quotes other market makers display and to hold varying amounts of securities in inventory. By having to maintain inventory positions, we are subjected to a high degree of risk. We cannot assure you that we will be able to manage such risk successfully or that we will not experience significant losses from such activities, which could have a material adverse effect on our business, financial condition and operating results.

22.    The Registration Statement and Prospectus described possible losses in

connection with the Company's pricing model as follows:

> **We may incur losses in our market making activities in the event of failures of our proprietary pricing model.**
>
> The success of our market making business is substantially dependent on the accuracy of our proprietary pricing mathematical model, which continuously evaluates and monitors the risk inherent in our portfolio, assimilates market data and reevaluates our outstanding quotes each second. Our model is designed to automatically rebalance our positions throughout the trading day to manage risk exposures on our positions in options, futures and the underlying securities. In the event of a flaw in our pricing model and/or a failure in the related software, our pricing model may lead to unexpected and/or unprofitable trades, which may result in material trading losses.

23.     The statements referenced above in ¶¶21 and 22 were materially false and misleading because although they mentioned losses the Company *might* incur, they failed to disclose that the Company already *had* suffered material trading losses prior to the closing of the IPO as a result of options market manipulation and that its proprietary pricing model was unable to prevent such material trading losses from that manipulation at the time of the IPO.

24.     Under applicable SEC rules and regulations governing the preparation of the Registration Statement and Prospectus, the Registration Statement was required to disclose that the Company's safeguards in place to protect itself against market manipulations, which were impacting the Company's continuing operations, had proven inadequate. The Registration Statement failed to contain any such disclosure.

25.     After the close of trading on July 5, 2007, Interactive Brokers filed a Form 8-K with the SEC reporting its preliminary financial results for the second quarter of 2007, the period ending June 30, 2007. Among other things, the Company reported that it had incurred a $37 million loss beginning on May 4, 2007 and continuing on the following few trading days as a result of manipulative options trading activities on the German electronic stock market.

26.    Following the Company's filing, in after-market trading and on July 6, 2007, the price of Interactive Brokers Common Stock dropped from $27.11 per share to $24.97 per share on extremely heavy trading volume.

27.    The decline in the price of the Company's Common Stock occurred notwithstanding the fact that an entity affiliated with Chief Executive Officer and Company founder Thomas Peterffy bought the claims from the Company for $37 million, hoping to recover the losses after the investigation being conducted in Germany.  According to a Forbes.com article on July 6th, Peterffy's "reassurance wasn't enough to convince investors, who dumped Interactive Brokers in after-hours trading . . ."

28.    The manipulation was more completely described in a Form 10-Q for the period ended June 30, 2007 and filed with the SEC on August 13, 2007 as follows:

> On May 3, 2007, Altana AG, a stock in which we are a Registered Market Maker, declared a special cash dividend of EUR 33.00, which amounted to about 74% of the company's value. On Deutsche Boerse AG's XETRA trading system, closing stock prices are determined by a day's end auction. At the closing auction, approximately 31 million Altana shares, which amounted to 44% of the true float, traded at an artificial price that was approximately 25% below the regular trading session's final price ex-dividend. We believe that this artificial price was set by buyers and sellers who unlawfully colluded to manipulate Altana's options prices.
>
> The closing auction price of the Altana shares was used by the EUREX to calculate a new set of contract parameters for the outstanding options. Since Altana's closing stock price was artificial, its dependent option strike prices and contract multiplier were also artificial and not calculated to reflect values corresponding to the change in the value of the underlying stock. Accordingly, on May 4, 2007 and thereafter, our market making options positions were affected by the artificial closing price of May 3 and were mis-priced. As a result of this manipulation, we suffered a position loss over the ensuing trading days amounting to approximately $37 million. Other Altana market makers also suffered substantial losses as a result of this manipulation, and we have reported this manipulation to, and met with, the German Federal Financial Supervisory Authority, the BaFin, which has undertaken an official investigation of the matter.

## COUNT I

### Violation of Section 11 of the Securities Act

29.    Plaintiff repeats and realleges each and every allegation contained above.

30.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class.

31.    The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

32.    Interactive Brokers is the registrant for the IPO.  The Defendant named herein is responsible for the contents and dissemination of the Registration Statement and the Prospectus.

33.    As issuer of the shares, Interactive Brokers is strictly liable to Plaintiff and the Class for the misstatements and omissions.

34.    Defendant did not make a reasonable investigation or possess reasonable grounds for the belief that the statements contained in the Registration Statement and the Prospectus were true and without omissions of any material facts and were not misleading.

35.    By reasons of the conduct herein alleged, Defendant violated Section 11 of the Securities Act.

36.    Plaintiff acquired Interactive Brokers shares pursuant to the Registration Statement.

37.    Plaintiff and the Class have sustained damages.  The value of Interactive Brokers declined substantially subsequent to and due to defendant's violations.

38.    At the times they purchased shares of Interactive Brokers Common Stock, Plaintiff and the other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to

July 5, 2007. Less than one year has elapsed from the time that Plaintiff discovered or

reasonably could have discovered the facts upon which this Complaint is based to the time that

Plaintiff filed this Complaint. Less than three years have elapsed between the time that the

securities upon which this Count is brought were offered to the public and the time Plaintiff filed

this Complaint.

## COUNT II

### Violations of Section 12(a)(2) of the Securities Act

39.     Plaintiff repeats and realleges each and every allegation contained above.

40.     This Count is brought pursuant to Section 12(a)(2) of the Securities Act, 15

U.S.C. §77l(a)(2).

41.     By means of the Registration Statement and Prospectus, and by using means and

instruments of transportation and communication in interstate commerce and of the mails,

Defendant through the Offering sold Interactive Brokers Common Stock to Plaintiff and the

other members of the Class.

42.     Defendant successfully solicited these purchases motivated, at least in part, by its

own financial interest. Defendant reviewed and participated in drafting the Prospectus. Through

ensuring the successful completion of the Offering, Defendant received more than $1.1 billion.

43.     The Registration Statement, at the time it became effective, contained material

misrepresentations of fact and omitted facts necessary to make the facts stated therein not

misleading, as set forth above. The facts misstated and omitted would have been material to a

reasonable person reviewing the Registration Statement.

44.     Defendant as a "seller" owed to the purchasers of Interactive Brokers Common

Stock, including Plaintiff and the other Class members, the duty to make a reasonable and

diligent investigation of the statements contained in the IPO materials, including the Prospectus

contained therein, to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendant knew of, or in the exercise of reasonable care should have known of, the misstatements and omissions contained in the IPO materials as set forth above.

45.    Plaintiff and other members of the Class purchased or otherwise acquired Interactive Brokers Common Stock pursuant to the defective Registration Statement and Prospectus. Plaintiff did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Prospectus.

46.    Plaintiff, individually and representatively, hereby offers to tender to Defendant those securities which Plaintiff and other Class members continue to own, on behalf of all members of the Class who continue to own such securities, in return for the consideration paid for those securities together with interest thereon. Class members who have sold their Interactive Brokers Common Stock are entitled to recessionary damages.

47.    By reason of the conduct alleged herein, Defendant violated Section 12(a)(2) of the Securities Act. Accordingly, Plaintiff and members of the Class who hold Interactive Brokers securities purchased in the IPO have the right to rescind and recover the consideration paid for their Interactive Brokers securities and hereby elect to rescind and tender their Interactive Brokers securities to Defendant sued herein. Plaintiff and Class members who have sold their Interactive Brokers securities are entitled to recessionary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a)    declaring this action to be a proper class action properly maintained

pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, certifying the Plaintiff

as the Class representative and appointing his counsel as Class Counsel;

(b)    awarding Plaintiff and the other members of the Class damages together

with interest thereon;

(c)    awarding Plaintiff and the other members of the Class their costs and

expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts'

fees and other costs and disbursements; and

(d)    awarding Plaintiff and the other members of the Class such other and

further relief as may be just and proper under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: January 11, 2008                    **ABRAHAM, FRUCHTER & TWERSKY, LLP**

Jeffrey S. Abraham (JA-2945)
Jack G. Fruchter (JF-8435)
Lawrence D. Levit (LL-9507)
One Penn Plaza, Suite 2805
New York, New York  10119
Telephone: (212) 279-5050
Facsimile:  (212) 279-3655

**Attorneys for Plaintiff**

CERTIFICATION OF ZEESHAN NAYAB
IN SUPPORT OF CLASS ACTION COMPLAINT

Zeeshan Nayab ("plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint prepared by counsel in the above-captioned case and has authorized the filing of a similar complaint or to otherwise add my name as a lead plaintiff in these proceedings.

2. Plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. During the proposed Class Period, plaintiff executed the following transactions in the stock of Interactive Brokers Group, Inc. See Attachment A:

5. In the past three years, plaintiff has not served, nor sought to serve, as a representative party on behalf of a class in an action filed under the federal securities laws.

6. Plaintiff will not accept payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 8th

day of January, 2008

_____
Zeeshan Nayab

ATTACHMENT A

| Date | Action | Amount | Price |
|------|--------|--------|-------|
| 05/04/2007 | Buy | 300 | $ 30.01 |
| 05/04/2007 | Buy | 1,000 | $ 33.00 |
| 05/30/2007 | Sell | 900 | $ 25.65 |
| 05/30/2007 | Sell | 400 | $ 25.66 |