UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

ZEESHAN NAYAB, Individually and On          :
Behalf of All Others Similarly Situated,

         Plaintiff,          :          Civil Action No. 08 CV 00242 (CM)

                    :          **ELECTRONICALLY FILED**

   -against-          :

INTERACTIVE BROKERS GROUP, INC.,          :

        Defendant.          :

------------------------------------- X

# MEMORANDUM OF LAW OF
## DEFENDANT INTERACTIVE BROKERS GROUP, INC.
### IN SUPPORT OF ITS MOTION FOR AN UNDERTAKING

DECHERT LLP
30 Rockefeller Plaza
New York, NY  10112-2200
(212)  698-3500
(212) 698-3599 (fax)

*Attorneys for Defendant Interactive Brokers
Group, Inc.*

13122328

## **Table Of Contents**

Table of Authorities ................................................................................................. ii

Preliminary Statement ............................................................................................. 1

Statement of Facts .................................................................................................. 2

Argument ................................................................................................................ 4

THE COURT SHOULD REQUIRE PLAINTIFF TO POST AN
UNDERTAKING FOR COSTS, INCLUDING ATTORNEY'S FEES ........................................ 4

     A.     The Complaint Borders On The Frivolous ............................................ 4

     B.     The Complaint Was Brought In Bad Faith ............................................ 6

Conclusion ............................................................................................................... 9

13122328

## Table of Authorities

**CASES**

Akerman v. Oryx Communications, Inc.,
    810 F.2d 336 (2d Cir. 1987)..................................................................................5

Bastian v. Petren Resources Corp.,
    892 F.2d 680 (7th Cir. 1990) ...............................................................................5

Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.,
    782 F.2d 329 (2d Cir. 1986)..................................................................................7

Dura Pharmaceuticals, Inc. v. Broudo,
    544 U.S. 336, 125 S.Ct. 1627 (2005).....................................................................5

I.G. Farben Shareholders Organization v. UBS AG,
    No. 05-CV-4041, Slip Copy, 2006 WL 2828558 (E.D.N.Y. Sept. 6, 2006) .......................7

In re Merrill Lynch & Co. Research Reports Securities Litigation,
    272 F. Supp. 2d 243 (S.D.N.Y. 2003)......................................................................6

In re Merrill Lynch & Co. Research Reports Securities Litigation,
    289 F. Supp. 2d 429 (S.D.N.Y. 2003)......................................................................5

Lentell v. Merrill Lynch & Co.,
    396 F. 3d 161 (2d Cir. 2005) ................................................................................6

Montague v. Electronic Corp. of America,
    76 F. Supp. 933 (S.D.N.Y. 1948) ...........................................................................6

Oil & Gas Income, Inc. v. O.B. Trotter,
    395 F.2d 753 (5th Cir. 1968) ................................................................................4

Pani v. Empire Blue Cross Blue Shield,
    152 F.3d 67 (2d Cir. 1998)...................................................................................6

In re Salomon Smith Barney Mutual Fund Fees Litigation,
    441 F. Supp. 2d 579 (S.D.N.Y. 2006)......................................................................6

Selletti v. Carey,
    173 F.R.D. 96 (S.D.N.Y. 1997), aff'd, 173 F. 3d 104 (2d Cir. 1999) ................................4

Sierra Club v. U.S. Army Corps of Engineers,
    776 F.2d 383 (2d Cir. 1985)..................................................................................7

13122328

Stadia Oil & Unanium Co. v. Wheelis,
    251 F.2d 269 (10th Cir. 1957) ................................................................7

Straus v. Holiday Inns, Inc.,
    460 F. Supp. 729 (S.D.N.Y. 1978) .....................................................4, 6

Western Federal Corp. v. Erickson,
    739 F.2d 1439 (9th Cir. 1984) ................................................................7

**STATUTES**

15 U.S.C. § 77k(e) ...................................................................................1, 4

**OTHER AUTHORITIES**

L. Rule 54.2..................................................................................................4

13122328

Defendant Interactive Brokers Group, Inc. ("IB" or the "Company") respectfully submits this memorandum of law in support of its motion, pursuant to Section 11(e) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77k(e), for an order requiring the plaintiff, Zeeshan Nayab (the "Plaintiff"), to post an undertaking in the amount of $250,000 as security for costs, including attorneys' fees, incurred and anticipated to be incurred by the Company in defending this action.

### Preliminary Statement

IB, through its subsidiaries, operates as a global electronic market maker and broker, and it executes and processes securities, futures and foreign exchange trades on more than 60 electronic exchanges and trading platforms worldwide. Beginning on May 4, 2007, IB sold 40 million shares in an initial public offering (the "IPO"), thereby raising approximately $1.2 billion. That same day, IB began incurring losses as a result of manipulative options trading activities by a counterparty relating to the German company Altana AG. When it issued its first quarterly earnings release as a public company, on July 5, 2007, IB disclosed that it had been a victim of the Altana options fraud and suffered losses of $37 million as a result of the fraud, and that its founder and chief executive officer, Thomas Peterffy, had made the Company whole by paying the Company $37 million in exchange for the right to any recovery up to that amount plus costs from the perpetrators of the fraud.

Plaintiff allegedly purchased 1300 shares in the IPO and sold those shares less than a month later, on May 30, 2007. Even though (i) the Company's Registration Statement for the IPO was issued prior to the occurrence of the Altana fraud and (ii) Plaintiff sold his IB stock before the Altana losses were disclosed, Plaintiff commenced this action on January 11, 2008 alleging that IB violated Sections 11 and 12 of the Securities Act by failing to disclose the Altana fraud in the Registration Statement. (A copy of Plaintiff's Class Action Complaint for

13122328

Violations of Federal Securities Laws (the "Complaint") is annexed as Exhibit 1 to the

Declaration of Neil A. Steiner, dated March 10, 2008 ("Steiner Declaration").)

The Complaint itself makes clear that Plaintiff does not have any viable claim against IB

for violating the federal securities laws because the allegations demonstrate that Plaintiff did not

suffer any loss as a result of the alleged failure to disclose the Altana fraud. Indeed, in response

to a demand to withdraw the Complaint, Plaintiff acknowledged this fatal defect. Rather than

voluntarily dismiss his claim, however, Plaintiff stated his intention to attempt to amend the

Complaint in the event he is appointed Lead Plaintiff. (Copies of correspondence between

counsel for IB and counsel for Plaintiff are annexed as Exhibits 2 and 3 to the Steiner

Declaration.) But the lack of loss causation -- apparent from the face of the Complaint -- is

incapable of being cured. Thus, Plaintiff's continued prosecution of this action borders on the

frivolous or is being done by counsel for the improper purpose of seeking, through the publicity

of this litigation, to locate other potential plaintiffs. In either event, Plaintiff should be required

to post an undertaking, as provided for in Section 11(e) of the Securities Act, before IB is forced

to continue under the cloud of this securities fraud claim and to spend hundreds of thousands of

dollars in legal fees to obtain its dismissal at the pleading stage.

## Statement of Facts[1]

Plaintiff purchased 1300 shares of IB common stock on May 4, 2007, shortly after the

commencement of the IPO, at prices between $30.01 and $33.00 per share. He sold all of those

shares on May 30, 2007 for $25.65 or $25.66 per share, and is not alleged to have been a

shareholder of IB at any subsequent time.

---

[1] This Statement of Facts is drawn from the allegations of the Complaint, which are accepted as true solely for purposes of this motion.

13122328

IB operates as a global electronic market maker and broker, and it executes and processes securities, futures and foreign exchange trades on more than 60 electronic exchanges and trading platforms worldwide. IB sold 40 million shares of its common stock to the public in an IPO commencing on May 4, 2007, and its common stock trades on the NASDAQ under the ticker symbol IBKR. In the months following the IPO, the price of the Company's common stock decreased to a low of $21.00. The price subsequently rebounded, and at the time of the filing of the Complaint on January 11, 2008, it closed at $32.77 per share, and it currently trades at approximately $30.35 per share.

According to the Complaint, beginning on May 4, 2007 and continuing on the following few days of trading, the Company incurred a $37 million loss as a result of manipulative options trading activities in Altana. (Compl. ¶ 25.) The Complaint does not – because it cannot – allege that the Altana fraud occurred prior to the issuance of the Registration Statement, much less that any officer of IB knew that the Altana loss had been incurred prior to the issuance of the Registration Statement. Nevertheless, the Complaint alleges that the Registration Statement was materially false and misleading because it did not disclose the Altana fraud. Plaintiff alleges that IB disclosed this unusual, non-recurring loss on July 5, 2007, and that the price of IB's common stock dropped in response to the disclosure. (Compl. ¶ 26.) Ignoring the dispositive fact that Plaintiff had sold all of his IB stock more than a month before this disclosure, the Complaint further alleges that Plaintiff sustained damages because IB's stock declined in value during trading on July 6, 2007. (Compl. ¶ 37.)

13122328

**Argument**

## THE COURT SHOULD REQUIRE PLAINTIFF TO POST AN UNDERTAKING FOR COSTS, INCLUDING ATTORNEY'S FEES

Section 11(e) of the Securities Act grants the Court broad discretion to "require an undertaking for the payment of the costs of such suit, including reasonable attorney's fees . . . ." 15 U.S.C. § 77k(e); see also, e.g., Straus v. Holiday Inns, Inc., 460 F. Supp. 729, 732 (S.D.N.Y. 1978). Among the primary purposes of the rule is to deter the bringing of meritless actions solely for the purposes of procuring a favorable settlement. Straus, 460 F. Supp at 732 (citing Ernst & Ernst v. Hochfelder, 425 U.S. 185, 211 n.30, 96 S. Ct. 1375, 1389 (1976) and Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 740-41, 95 S. Ct. 1917, 1927-28 (1975)). An undertaking pursuant to Section 11(e) is appropriate where, as here, (a) the plaintiff's claim borders on the frivolous or (b) the action was otherwise commenced in bad faith. See Straus, 460 F. Supp. at 732-33.[2]

A.     The Complaint Borders On The Frivolous

In establishing that a claim "borders on the frivolous" for Section 11(e) purposes, courts have considered, even before discovery has been completed, whether the Section 11 claim is bereft of factual support. See Straus, 460 F. Supp. at 736. And, the lack of merit to the complaint justifies taking the estimated attorneys' fees to be incurred by defendant into account in setting the amount of the undertaking. See Oil & Gas Income, Inc. v. Trotter, 395 F.2d 753, 753-54 (5th Cir. 1968) (affirming trial court's requirement of bond posting and subsequent award under Section 11(e)). Here, it is apparent from the Complaint that Plaintiff's alleged loss was not

---

[2]     The Court would also be well within its discretion to order an undertaking under Local Rule 54.2, which permits the Court to "order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate." See, e.g., Selletti v. Carey, 173 F.R.D. 96, 100 (S.D.N.Y. 1997), aff'd, 173 F.3d 104 (2d Cir. 1999).

13122328

caused by any purported misrepresentation or omission in the Registration Statement, because Plaintiff sold all of his IB stock prior to the alleged corrective disclosure. Accordingly, an undertaking in the amount of $250,000 to cover IB's anticipated cost of moving to dismiss the action is well-warranted.

Under Section 11 of the Securities Act of 1933, the absence of loss causation is an explicit defense. See, e.g., Bastian v. Petren Res. Corp., 892 F.2d 680, 685 (7th Cir. 1990) ("[T]he standard rule of tort law that the plaintiff must allege and prove that, but for the defendant's wrongdoing, the plaintiff would not have incurred the harm of which he complains."). Loss causation requires there to be a causal connection between an alleged misrepresentation and a subsequent decline in stock price. See Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347, 125 S. Ct. 1627, 1634 (2005). Where, as here, the price of the stock declines prior to the disclosure of the alleged misstatement or omission, the loss may not be charged to the defendant. See id.; see also Akerman v. Oryx Commc'n, Inc., 810 F.2d 336, 342 (2d Cir. 1987); In re Merrill Lynch & Co. Research Reports Sec. Lit., 289 F. Supp. 2d 429, 437 (S.D.N.Y. 2003).

The Complaint alleges that IB's disclosure of the Altana fraud on July 5, 2007 caused the price of its stock to drop. (Compl. ¶ 26.) By that time, of course, Plaintiff had already sold all of his IB stock holdings and owned no shares of IB common stock. Plaintiff admits that he sold all of his IB stock on May 30, 2007, more than a month before the July 5, 2007 alleged disclosure of IB's $37 million loss as a result of the Altana options manipulation. (Nayab Certification, Attachment A.) Hence, Plaintiff cannot show that he suffered any loss as a result of IB's alleged failure to disclose the Altana fraud sooner. To the contrary, the Complaint negates the existence of loss causation. Courts routinely dismiss Section 11 claims where the lack of loss causation is

13122328

apparent from the face of the Complaint. See, e.g., Lentell v. Merill Lynch & Co., 396 F.3d 161,

172-75 (2d Cir. 2005); In re Salomon Smith Barney Mut. Fund Fees Litig., 441 F. Supp. 2d 579,

591 (S.D.N.Y. 2006); In re Merrill Lynch & Co. Research Reports Sec. Litig., 272 F. Supp. 2d

243, 254-55 (S.D.N.Y. 2003); see also Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74

(2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under

Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face

of the complaint").

      This indisputable lack of loss causation makes an undertaking in an amount sufficient to

cover IB's costs of bringing a motion to dismiss appropriate.  In determining whether to require

an undertaking, courts consider whether, as here, the facts before the court tend to strongly refute

the plaintiff's claims.  See Straus, 460 F. Supp. at 734; Montague v. Electronic Corp. of

America, 76 F. Supp. 933, 936 (S.D.N.Y. 1948) (requiring an undertaking on the basis of facts

contained in defendants' affidavits).  In Straus, the Court determined that the plaintiff provided

too little to indicate that she could eventually succeed on the merits of the Section 11 claim,

having presented and repeated only unsubstantiated allegations.  460 F. Supp. at 734.  A fortiori,

Plaintiff's concession that he sold his IB stock before any alleged corrective disclosure

establishes a clear affirmative defense and demonstrates that the Complaint borders on the

frivolous, making an undertaking appropriate.

B.    The Complaint Was Brought In Bad Faith

      The obvious lack of loss causation further suggests that the Complaint was brought in bad

faith and for the improper purpose of attempting to use the publicity generated by the filing of

the litigation to locate other potential plaintiffs who purchased IB stock in the IPO and continued

to own that stock after the July 5, 2007 disclosure of the Altana fraud.  In determining whether a

claim was brought in bad faith for purposes of Section 11, courts consider, inter alia, whether

6

13122328

there was clear evidence that a claim is entirely without color and made for reasons of harassment, delay or other improper purposes. See Western Fed. Corp. v. Erickson, 739 F.2d 1439, 1444 (9th Cir. 1984) (ultimately granting costs under the alternative 'borders on the frivolous' standard); Stadia Oil & Unanium Co. v. Wheelis, 251 F.2d 269, 277 (10th Cir. 1957) (affirming trial court's award of costs based on finding of lack of good faith).

The Second Circuit has held that a claim is "entirely without color" when it lacks any legal or factual basis and that "[w]hile there is no precise definition of improper purpose it may be evidenced by conduct occurring either before or during trial." Sierra Club v. U.S. Army Corps of Engineers, 776 F.2d 383, 390 (2d Cir. 1985) (internal citations and quotations omitted). A claim is "colorable" when "a reasonable attorney could have concluded that facts supporting the claim might be established, not whether such facts actually had been established." Dow Chem. Pacific Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 344 (2d Cir. 1986) (remanding sanction for further findings on improper purpose). Bad faith "may be inferred from an attorney's actions when they are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." I.G. Farben Shareholders Organization v. UBS AG, No. 05-CV-4041, Slip Copy, 2006 WL 2828558, at *7 (E.D.N.Y. Sept. 6, 2006) (internal citation and quotation omitted). "When evaluating bad faith, the appropriate focus 'is the conduct of the party in instigating or maintaining the litigation, for an assessment of whether there has been substantive bad faith as exhibited by, for example, its pursuit of frivolous contentions, or procedural bad faith as exhibited by, for example, its use of oppressive tactics or its willful violations of court orders.'" Id. at *7 (citing Dow Chemical, 782 F.2d at 345).

13122328

Plaintiff's experienced counsel surely knew prior to filing the Complaint that the Section 11 claim cannot withstand a motion to dismiss because of the lack of loss causation. Indeed, Defendants' counsel so informed Plaintiff before filing this motion. Nevertheless, by proceeding to file and prosecute the action, Plaintiff and his counsel were not only able but required by the Private Securities Litigation Reform Act of 1995 to publish a notice of its filing and to advise other purported class members of the right to seek to be appointed lead plaintiff. Plaintiff and his counsel caused this notice, a copy of which is annexed as Exhibit 4 to the Steiner Declaration, to be published on January 11, 2008. The notice advises that any member of the purported class interested in becoming the lead plaintiff has until March 11, 2008 to file an appropriate motion, and further advertises that such potential class member could contact Plaintiff's counsel for legal advice and representation in that regard. Combined with the obvious lack of merit to the Complaint, this notice strongly suggests that Plaintiff and his counsel commenced this action for the improper purpose of attempting to locate other potential plaintiffs who may not be barred by the clear defect in Plaintiff's claim. Thus, requiring an undertaking is appropriate for this independent reason.

8

## **Conclusion**

For the foregoing reasons, IB respectfully requests that the Court require Plaintiff to post

an undertaking in the amount of $250,000 as a condition to continuing to prosecute this

litigation.

Dated: New York, New York.
      March 10, 2008

                    DECHERT LLP


                    By:_____
                      Andrew J. Levander
                      Neil A. Steiner
                  30 Rockefeller Plaza
                  New York, NY  10112-2200
                  (212) 698-3500
                  (212) 698-3599 (fax)
                  andrew.levander@dechert.com
                    *Attorneys for Defendant*
                    *Interactive Brokers Group, Inc.*

13122328