Jack G. Fruchter (JF-8435)
Ximena R. Skovron (XS-3397)
**ABRAHAM FRUCHTER & TWERSKY LLP**
One Penn Plaza, Suite 2805
New York, New York 10119
Telephone: (212) 279-5050
Facsimile:  (212) 279-3655

**Attorneys for Plaintiff**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ZEESHAN NAYAB, Individually and On Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>      -against-<br><br>INTERACTIVE BROKERS GROUP, INC.,<br><br>              Defendant. | Case No. 08 CV 00242 (CM) |

**PLAINTIFF ZEESHAN NAYAB'S MEMORANDUM**
**OF LAW IN OPPOSITION TO DEFENDANT**
**INTERACTIVE BROKER GROUP, INC.'S MOTION FOR AN UNDERTAKING**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      Defendant Has Failed to Demonstrate That the Complaint Borders
        on the Frivolous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.     There is no Evidence That the Complaint Was Brought in Bad Faith . . . . . . . . . . . . . . . 6

III.    Defendant's Motion is Effectively Moot . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**TABLE OF AUTHORITIES**

**Cases**                                                                    **Page(s)**

*Adair v. Kaye Kotts Assoc.*,
    No. 97 Civ. 3375, 1998 U.S. Dist. LEXIS 3900 (S.D.N.Y. Mar. 27, 1998) . . . . . . . . . . 5

*Aid Auto Stores, Inc. v. Cannon*,
    525 F.2d 468 (2d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    411 F. Supp. 2d 377 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Salomon Smith Barney Mutual Funds Fee Litig.*,
    441 F. Supp. 2d 579 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Vonage Initial Public Offering (IPO) Secs. Litig.*,
    No. 07-177, 2007 U.S. Dist. LEXIS 66258 (D.N.J. Sept. 6, 2007) . . . . . . . . . . . . . . . . 6

*In re WRT Energy Sec. Litig.*,
    No. 96 Civ. 3610 (JFK), 2005 U.S. Dist. LEXIS 1894 (S.D.N.Y. Aug. 30, 2005) . . . . . . 5

*Lentell v. Merrill Lynch & Co.*,
    396 F.2d 161 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lerner v. Ripley Co.*,
    [1961-1964] Fed. Sec. L. Rep. (CCH) ¶ 91,249 (S.D.N.Y.1963) . . . . . . . . . . . . . . . . 4

*Straus v. Holiday Inns, Inc.*,
    460 F. Supp. 729 (S.D.N.Y. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Zauderer v. Office of Disciplinary Counsel*,
    471 U.S. 626 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Statutes and Rules**

15 U.S.C. §77aa(a)(3)(A)(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

15 U.S.C. § 77z-1(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

15 U.S.C. §77l(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

22 NYCRR § 1200.6 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Other Authorities**

3 L. Loss, Securities Regulation 1838 (2d ed. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Plaintiff Zeeshan Nayab ("Plaintiff"), by his undersigned counsel, respectfully submits this memorandum of law in opposition to the motion made by Defendant Interactive Broker Group, Inc. ("Defendant" or "IBG") for an undertaking.

## PRELIMINARY STATEMENT

Defendant's motion is a transparent effort to color this Court's view of the underlying merits of this action. The motion was filed four days before the initial status conference after Defendant had previously sought and obtained from Plaintiff an extension of time within which to respond to the Complaint[1] pending appointment of a lead plaintiff pursuant to the provisions of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). There is, however, no merit to Defendant's assertion that the Complaint is "borderline frivolous" since:  (1) loss causation is not an element of claims arising under the Securities Act of 1933 (the "Securities Act"); and (2) a plausible and meritorious theory of loss causation exists in this action. Indeed, Plaintiff's counsel has previously explained to Defendant's counsel that the Complaint would be amended to address the concerns which Defendant raised about this issue. Similarly lacking in merit is Defendant's assertion of bad faith which is based upon its speculation and distortion of the record.

Defendant's motion is all the more confusing -- or perhaps transparent in motive -- because as Defendant knows (and has previously sought to explain to the Court), the PSLRA leaves open the appointment of lead plaintiff until sixty days after notice that a complaint has been filed is publicly disseminated. Here, as is often the case, the class member with the largest loss seeking appointment as lead plaintiff is different from the one who filed the initial

---

[1] The use of the term "Complaint" refers to the Class Action Complaint filed in *Nayab v. Interactive Brokers Group, Inc.*, Case No. 08-00242 (S.D.N.Y.)

complaint. Therefore, not only does Defendant's motion lack merit but also is moot because

Plaintiff Zeeshan Nayab will be replaced as the named plaintiff by proposed lead plaintiff Seow

Lin, who filed an unopposed motion for appointment as lead plaintiff on March 11, 2008.

## SUMMARY OF FACTS

This action is brought on behalf of all persons who purchased or otherwise acquired

shares of IBG Class A common stock (the "Common Stock") traceable to its initial public

offering ("IPO") which occurred on May 4, 2007 (the "Class"). Complaint ¶1. The claims

asserted arise under Sections 11 and 12(a)(2) of the Securities Act of 1933 (the "Securities Act").

Complaint ¶2.

IBG, together with its subsidiaries, operates as an automated global electronic market

maker and broker. Complaint ¶7. It specializes in routing orders, as well as in executing and

processing trades in securities, futures, and foreign exchange instruments. *Id.* IBG conducted

its IPO between May 4, 2007 and May 9, 2007, selling 40 million shares of Common Stock to

the investing public at a price of $30.01 per share, raising more than $1.2 billion. Complaint

¶15. The IPO was accomplished through a registration statement ("Registration Statement") and

prospectus (the "Prospectus") filed with the Securities and Exchange Commission ("SEC"). *Id.*

The Registration Statement and Prospectus positively described Interactive Broker's

function as a "market maker," not an investor, stating that IBG's ability to generate profits "is

generally a function of transaction volume on electronic exchanges rather than volatility or the

direction of price movements." *Id.* at ¶19. Defendant further touted its "proprietary pricing

mathematical model" as providing it with a "significant advantage" over its competition,

enabling it to maximize profits while minimizing losses typically associated with manual risk

-2-

management in that it "continuously evaluates and monitors the risks inherent in [IBG's] portfolio, assimilates market data and reevaluates outstanding quotes in [IBG's] entire portfolio each second." *Id.* at ¶¶18, 19.  IBG reported that it "may incur losses from our market making activities in the event of failures of our proprietary pricing model." *Id.* at ¶23.

On May 29, 2007, Defendant issued a press release reporting its first quarter earnings results, which were also filed as part of a Form 10-Q.  Those first quarter results were disappointing to investors, causing IBG's share price to decline by 6%.  As reported in IBG's Form 10-Q for the period ending March 31, 2007, this earnings shortfall related to trading difficulties experienced with respect to "unexpectedly heavy options activity in advance of certain corporate announcements" which adversely impacted IBG's market making operations during the three months ended March 31, 2007.  In other words, Defendant's stock declined due, in part, to the failure of its proprietary trading system to prevent being on the short side of trades by market operators.

On July 5, 2007, in a Form 8-K, IBG reported that it had incurred another $37 million in losses beginning on May 4, 2007 and continuing on the following few trading days as a result of the options market machinations in the German electronic stock market.  Complaint ¶25.  The $37 million loss was the second instance that Defendant's proprietary technology and pricing models lacked sufficient safeguards to protect itself against market manipulations which were impacting its continued operations.  Despite the indemnification of this second loss by IBG's founder and chief executive officer, Thomas Peterffy, which IBG reported in the Form 8-K, the price of IBG's Common Stock dropped from $27.11 per share to $24.97 per share on extremely heavy trading volume.  Complaint ¶26.

These and other statements made in the Registration Statement and Prospectus are alleged to have been false and misleading because they failed to disclose that IBG had, in fact, suffered material losses during its first quarter and at or around the time of its IPO as a result of options market machinations and that its proprietary system was unable to prevent losses from such machinations at the time of the IPO. *Id.* at ¶¶20, 25.

## ARGUMENT

Section 11(e) of the Securities Act of 1933 (the "Securities Act"), authorizes the court to award attorney's fees and costs if "the court believes the suit or the defense to have been without merit." 15 U.S.C. §77l(e). Assessing attorney fees under Section 11(e) "require[s] a finding that the claim [1] borders on the frivolous or [2] has been brought in bad faith." *Aid Auto Stores, Inc. v. Cannon*, 525 F.2d 468, 471 (2d Cir. 1975) (citing cases). The mere failure of a party to present sufficient evidence to support its claims will not in itself warrant a determination of frivolity. *Id.* "An application for an undertaking generally 'is not looked upon with favor.'" *Straus v. Holiday Inns, Inc.*, 460 F. Supp. 729, 732 (S.D.N.Y. 1978) (citing *Lerner v. Ripley Co.*, [1961-1964] Fed. Sec. L. Rep. (CCH) ¶ 91,249, at 94,127 (S.D.N.Y.1963); 3 L. Loss, Securities Regulation 1838 (2d ed. 1961)).

## I.    Defendant Has Failed to Demonstrate That the Complaint Borders on the Frivolous

Stripping through Defendant's rhetoric, the only basis for the Complaint purportedly bordering on the frivolous is that Plaintiff has failed to plead loss causation. However, loss causation is not an element of a Section 11 claim. Instead, "[a] plaintiff need only plead a material misstatement or omission in the registration statement to establish a *prima facie* fraud claim under §11 of the Securities Act; *a plaintiff is not required to plead loss causation*." *In re*

-4-

*Flag Telecom Holdings, Ltd. Sec. Litig.*, 411 F. Supp. 2d 377, 382 (S.D.N.Y. 2006) (Conner, J.) (emphasis added).  *See also, In re WRT Energy Sec. Litig.*, No. 96 Civ. 3610 (JFK), 2005 U.S. Dist. LEXIS 1894 at *2 (S.D.N.Y. Aug. 30, 2005); *Adair v. Kaye Kotts Assoc.*, No. 97 Civ. 3375, 1998 U.S. Dist. LEXIS 3900, at *7 (S.D.N.Y. Mar. 27, 1998).

*Lentell v. Merrill Lynch & Co.*, 396 F.2d 161 (2d Cir. 2005), the leading case cited by Defendant, is not on point.  *Lentell* was an action arising under Section 10(b) of the Securities Exchange Act of 1934 which requires an affirmative pleading of loss causation.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005).  Here, in contrast, the claims arise under Sections 11 and 12(a)(2) of the Securities Act for which loss causation is not an element of a *prima facie* claim.

*In re Salomon Smith Barney Mutual Funds Fee Litig.*, 441 F. Supp. 2d 579, 589 (S.D.N.Y. 2006), cited by Defendant, is also inapposite to the case at Bar.  There, the plaintiffs pled a theory of loss causation that was not cognizable as a matter of law.  Here, in contrast, Defendant's core assertion is that factually -- rather than legally -- there is no loss causation.

In any event, it is a factual assertion which Plaintiff vigorously disputes.  Plaintiff sold after an earnings shortfall reported on May 29, 2007, relating to the trading difficulties experienced with respect to "unexpectedly heavy options activity in advance of certain corporate announcements" which adversely impacted Defendant's market making operations during the three months ended March 31, 2007.  The loss disclosed on July 5, 2007 was simply the second instance that IBG's proprietary technology and pricing models lacked sufficient safeguards to protect itself against market manipulations which were impacting its continued operations.

Therefore, there is no merit to Defendant's assertion that this action borders on the frivolous.

## II.    There is no Evidence That the Complaint Was Brought in Bad Faith

Defendant claims that Plaintiff's bad faith is evidenced by: (a) filing a complaint in a case where there is no loss causation; and (b) publishing a notice informing investors that they could move for appointment as lead plaintiff within a sixty day period. Defs. Memo. at 8. Defendant is in error.

As for the first point, as stated above, loss causation exists here as a factual matter, although as a matter of law, it is not an element of the claims asserted. Also, assuming *arguendo* that the loss causation theory was somehow infirm in the Complaint as drafted, Plaintiff carefully explained the loss causation theory in a letter to Defendant's counsel and indicated that once the lead plaintiff motions were resolved that an amended complaint would be forthcoming. Amending a complaint in response to an alleged pleading deficiency is a common occurrence in federal court and, indeed, is an encouraged practice. *Accord* Fed. R. Civ. P. 15(a) (amendment as of right allowed prior to filing of responsive pleading and otherwise "freely given" . . .).

As to the second point, counsel, who is experienced in federal securities litigation, surely is aware that notice of the filing of a securities law class action is required as a matter of law. *See* 15 U.S.C. §77aa(a)(3)(A)(i); *see also In re Vonage Initial Public Offering (IPO) Secs. Litig.*, No. 07-177, 2007 U.S. Dist. LEXIS 66258, at *32 (D.N.J. Sept. 6, 2007) (PSLRA notices must be "published, in a widely circulated national business-oriented publication or wire service . . . . ") (citing 15 U.S.C. § 77z-1(a)(3)).

Moreover, Plaintiff's counsel would have been permitted to advertise, if they so desired, in order to obtain client representation in this case.  The Supreme Court has held that attorneys' notices soliciting business through advertising is commercial free speech protected by the First Amendment.  *See Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 647 (1985).  Indeed, as the Supreme Court observed in *Zauderer*, contrary to stirring up meritless litigation, such notices are invaluable in providing interested persons with access to the courts for legal wrongs, such as those alleged to have been committed by Defendant here.  "That our citizens have access to their civil courts is not an evil to be regretted; rather, it is an attribute of our system of justice in which we ought to take pride.  The State is not entitled to interfere with that access by denying its citizens accurate information about their legal rights."  *Id.*; *Cf.* 22 NYCRR § 1200.6 (2008) (permitting attorney advertising provided certain procedures are followed).

Here, as Defendant points out, the PSLRA notice simply informed potential claimants of the pendency of the instant action and provided relevant accurate and objective information concerning the filing of the action.  The notice did not purport to provide legal advice or otherwise provide misleading or untruthful information.  There is, therefore, nothing unusual about the notice issued in this case and certainly nothing from which any inference of bad faith can reasonably be drawn.

## III.    Defendant's Motion is Effectively Moot

Zeeshan Nayab has not moved for appointment as a lead plaintiff in this case.  On March 11, 2008, within the time period proscribed by the PSLRA for filing a motion for appointment as lead plaintiff, Seow Lin, who has a larger financial interest in this action, moved for appointment as lead plaintiff.  At an appropriate time after appointment of the lead plaintiff by this Court, Mr.

Nayab intends to withdraw as a named plaintiff and to assume a role as an absent class member, and an amended complaint will be filed by Ms. Lin to reflect, among other things, her participation in this action. Therefore, Defendant's motion, which is based entirely upon Mr. Nayab's standing as a plaintiff, is moot. *Accord Persaud v. Exxon Corp.*, 867 F. Supp. 128, 135-36 (E.D.N.Y. 1994) (motion to dismiss for lack of standing denied as moot where plaintiff moved to amend the complaint substituting plaintiff).

## CONCLUSION

Therefore, for all the reasons set forth above, Defendant's motion for an undertaking pursuant to Section 11(e) of the Securities Act should be denied in its entirety.


Dated: March 13, 2008
      New York, New York

           **ABRAHAM FRUCHTER & TWERSKY LLP**


           By:_____/S/_____
             Jack G. Fruchter (JF-8435)
             Ximena R. Skovron (XS-3397)
             One Penn Plaza, Suite 2805
             New York, New York 10119
             Telephone: (212) 279-5050
             Facsimile:  (212) 279-3655
             **Attorneys for Plaintiff**