Jack G. Fruchter (JF-8435)
Lawrence D. Levit (LL-9507)
Ximena R. Skovron (XS-3397)
**ABRAHAM, FRUCHTER & TWERSKY, LLP**
One Penn Plaza, Suite 2805
New York, New York 10119
Telephone: (212) 279-5050
Facsimile: (212) 279-3655

**Lead Counsel for Lead Plaintiff**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ZEESHAN NAYAB, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> INTERACTIVE BROKERS GROUP, INC., and THOMAS PETERFFY, <br> Defendants. | No. 08 CV 00242 (CM) <br><br> **ECF Case** <br><br> **AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Lead Plaintiff Seow Lin ("Plaintiff") makes the following allegations, except as to

allegations specifically pertaining to Plaintiff and her counsel, based upon the investigation

undertaken by Plaintiff's counsel (which investigation included analysis of publicly available

news articles and reports, public filings, securities analysts' reports and advisories about

Interactive Brokers Group, Inc. ("Interactive Brokers" or the "Company"), press releases and

other public statements issued by the Company, and media reports about the Company) and

believes that substantial additional evidentiary support will exist for the allegations set forth

herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action brought on behalf of a class consisting of all persons other than defendants and certain others, who purchased the common stock ("Common Stock") of Interactive Brokers pursuant to and/or traceable to the Company's initial public offering ("IPO" or "Offering") on or about May 4, 2007 through July 5, 2007, seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act [15 U.S.C. §§77k, 77l(a)(2) and 77o].

3.      This Court has jurisdiction of this action pursuant to Section 22 of the Securities Act [15 U.S.C. §77v] and 28 U.S.C. §1331.

4.      Venue is properly laid in this District pursuant to Section 22 of the Securities Act and 28 U.S.C. §1391(b).  The acts and conduct complained of herein occurred in substantial part in this District and the IPO was marketed in this District.

5.      In connection with the acts and conduct alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications and the facilities of the NASDAQ Global Select Market.

## PARTIES

6.      Lead Plaintiff Seow Lin purchased shares of Interactive Brokers Common Stock, as set forth in the certification attached hereto and incorporated herein by reference, pursuant to and traceable to the Company's IPO, and was damaged thereby.

7.     Defendant Interactive Brokers together with its subsidiaries, operates as an automated global electronic market maker and broker.  It specializes in routing orders, as well as in executing and processing trades in securities, futures, and foreign exchange instruments as a member of approximately 60 electronic exchanges and trading venues worldwide.  The Company provides direct access trade execution and clearing services to institutional and professional traders for various electronically traded products, including options, futures, stocks, ETF's, forex, and bonds.  It offers continuous bid and offer quotations on approximately 324,000 securities and futures products listed on electronic exchanges.  The Company is headquartered in Greenwich, Connecticut.  Its stock is listed on the NASDAQ Global Select Market.

8.     Defendant Thomas Peterffy ("Peterffy" and together with Interactive Brokers, "Defendants") was, at all relevant times, the founder, Chief Executive Officer, Chairman of the Board and President of Interactive Brokers and in that capacity signed the Registration Statement, as that term is defined below.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

9.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of herself and all other persons who purchased the Common Stock of Interactive Brokers pursuant to and/or traceable to the Company's IPO (the "Class").  Excluded from the Class are Defendants herein, members of the immediate family of the individual defendant and any person, firm, trust, corporation, or other entity in which the Defendants have a controlling interest or which is related to or affiliated with the Defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

10.     The members of the Class are so numerous that joinder of all members is impracticable.  Interactive Brokers sold 40 million shares of Common Stock in the IPO.  The precise number of Class members is unknown to Plaintiff at this time but is believed to be in the thousands.  In addition, the names and addresses of the Class members can be ascertained from the books and records of Interactive Brokers or its transfer agent or the underwriters to the IPO.  Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in class actions arising under the federal securities laws.

11.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff has retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intends to prosecute this action vigorously.

12.     Plaintiff's claims are typical of the claims of the other members of the Class because Plaintiff's and all the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to Defendants.  Plaintiff does not have any interests antagonistic to, or in conflict with, the Class.

13.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged.  Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

14.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     Whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     Whether the Prospectus and Registration Statement (defined below) issued by Interactive Brokers to the investing public in connection with the IPO negligently omitted and/or misrepresented material facts about Interactive Brokers and its business; and

(c)     The extent of injuries sustained by members of the Class and the appropriate measure of damages.

## SUBSTANTIVE ALLEGATIONS

15.     Defendant Interactive Brokers operates as an automated global electronic market maker and broker.  It specializes in routing orders, as well as in executing and processing trades in securities, futures, and foreign exchange instruments as a member of approximately 60 electronic exchanges and trading venues worldwide.  On or about May 3, 2007, Interactive Brokers filed with the Securities and Exchange Commission (the "SEC") a Form S-1/A Registration Statement (the "Registration Statement") for the IPO.

16.     On or about May 4, 2007, the Prospectus (the "Prospectus") with respect to the IPO, which forms part of the Registration Statement, was filed with the SEC, whereby 40 million shares of Interactive Brokers' Common Stock priced at $30.01 per share were sold to the public

and began trading. The IPO closed on or about May 9, 2007, raising more than $1.2 billion for the Company.

17.    The IPO was a Dutch Auction handled by WR Hambrecht & Co., LLC, HSBC Securities (USA) Inc., Fox-Pitt, Kelton Incorporated, Sandler O'Neill + Partners, L.P. and E*Trade Securities, LLC as placement agents (or underwriters). The Offering method differed from the traditional firm commitment underwritten public offerings. The Offering price and allocation of shares was to be determined primarily by an auction process conducted by the lead banks and other securities dealers who participated in the Offering. Additionally, the placement agents were not required to sell any specific number or dollar amount of shares of common stock but rather agreed to use their best efforts to obtain potential purchasers for the shares.

18.    The Registration Statement and Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading and was not prepared in accordance with the rules and regulations governing its preparation.

19.    The Registration Statement and Prospectus positively described the Company's "competitive strengths" stating in pertinent part as follows:

> *Proprietary technology.* We view ourselves primarily as a technology company. Since our inception in 1977, we have focused on developing proprietary software to automate broker-dealer functions. Our proprietary technology makes us a low cost provider of market making and brokerage services. It also enables us to make markets profitably in financial instruments (e.g., equity options, futures, index options and equities) worldwide with low spreads between bid and offer prices, while at the same time providing our customers with the ability to effect trades at execution and commission costs that are among the lowest in the industry.

20.    The Registration Statement and Prospectus further positively described Interactive Brokers' function as a "market maker" stating in pertinent part as follows:

*Real-time risk management.* We operate as a market maker, not an investor. Therefore, our ability to generate profits is generally a function of transaction volume on electronic exchanges rather than volatility or the direction of price movements. We seek to calculate quotes a few seconds ahead of the market and execute small trades at a tiny but favorable differential as a result. Our proprietary pricing model continuously evaluates and monitors the risks inherent in our portfolio, assimilates market data and reevaluates the outstanding quotes in our entire portfolio each second. In our electronic brokerage business, our entire credit management process is automated, including real-time margin calls and automatic liquidation. This automated system enables us to maximize profits while minimizing losses typically associated with manual risk management.

21.    Additionally, the Registration Statement and Prospectus touted the Company's proprietary technology as reevaluating the Company's portfolio every second, rebalancing the portfolio continually throughout the trading day and thus minimizing the risk to the Company's portfolio "at all times:"

We conduct our market making business through our Timber Hill subsidiaries. As one of the largest market makers on many of the world's leading exchanges, we provide liquidity by offering competitively tight bid/offer spreads over a broad base of approximately 353,000 tradable, exchange-listed products. As principal, we commit our own capital and derive revenues or incur losses from the difference between the price paid when securities are bought (or sold) and the price received when those securities are sold (or bought). Because we provide continuous bid and offer quotations and we are continuously both buying and selling quoted securities, we may have either a long or a short position in a particular product at a given point in time. Our entire portfolio is evaluated each second and continuously rebalanced throughout the trading day, thus minimizing the risk of our portfolio at all times. This real-time rebalancing of our portfolio, together with our real-time proprietary risk management system, enables us to curtail risk and to be profitable in both up-market and down-market scenarios.

22.    The statements referenced above in ¶¶ 19, 20, and 21 were materially false and misleading because they failed to disclose that the Company's proprietary technology had failed to prevent material losses totaling $25 million resulting from options market machinations in advance of corporate announcements during the period ending March 31, 2007, although such

machinations involved multiple transactions executed in different securities. The Company did not supplement or otherwise correct this omission of material fact from the Registration Statement.

23.      When the Company's earnings, including the shortfall caused by the options market activities, was announced by the Company in a May 29, 2007 press release, the Company's share price declined by 6%. Thus, as *The Street.com* observed:

> Interactive Brokers Group (IBKR - Cramer's Take - Stockpickr) was among the many trailing financial stocks, sliding 6% to $25.91 after the Connecticut firm said first-quarter income was only $12.4 million, or 31 cents a share (pro forma), compared with year-ago income of 34 cents a share.

24.      After the close of trading on July 5, 2007, Interactive Brokers filed a Form 8-K with the SEC reporting its preliminary financial results for the second quarter of 2007, the period ending June 30, 2007. Among other things, the Company reported that it had incurred another loss relating to options trading, this time a $37 million loss beginning on or about May 3, 2007 and continuing on the following few trading days through the close of the IPO on May 9, 2007, as a result of options trading machinations on the German electronic stock market (the "Altana Options").

25.      Following the Company's filing of its Form 8-K, the price of Interactive Brokers Common Stock dropped from a closing price of $27.11 per share on July 5, 2007 to a closing price of $24.97 per share on July 6, 2007 on extremely heavy trading volume. The stock price continued to decline and closed at $23.49 per share on July 10, 2007.

26.      The decline in the price of the Company's Common Stock occurred notwithstanding the fact that an entity affiliated with Chief Executive Officer and Company

founder Defendant Peterffy bought the claims from the Company for $37 million, hoping to

recover the losses after the investigation being conducted in Germany. According to a

*Forbes.com* article on July 6, 2007, Peterffy's "reassurance wasn't enough to convince investors,

who dumped Interactive Brokers in after-hours trading . . ."

 27. The extent of the losses suffered by the Company as a consequence of the options

market machinations in advance of certain corporate announcements was only disclosed to be up

to a $25 million loss in a Form 10-Q filed on June 15, 2007:

> During the three months ended March 31, 2007, income before income tax in our
> market making segment decreased 21% compared with the three months ended
> March 31, 2006, reflecting lower trading gains. The decrease in trading gains was
> driven in part by heavy options activity in advance of certain corporate
> announcements which had a negative impact on our profits.

 28. Subsequently, on July 6, 2007, articles in both *TheStreet.com* and *Forbes.com*

attributed the entire $25 million in losses suffered by the Company to those options market

activities. For example, *Forbes.com* stated:

> In recent months, there have been some days when demand for certain call
> options  - - a bet that the underlying stock is about to rise in price - -
> overwhelmed supply, and Interactive Brokers had to meet the demand. That
> meant it was on the hook to lose if the stock shot up, which happened a few times
> during the first quarter, hence the $25 million shortfall.

 29. With respect to the losses resulting from trading in the Altana Options, those

losses were more completely described in a Form 10-Q for the period ended June 30, 2007,

which was filed with the SEC on August 13, 2007, as follows:

> On May 3, 2007, Altana AG, a stock in which we are a Registered Market
> Maker, declared a special cash dividend of EUR 33.00, which amounted to about
> 74% of the company's value. On Deutsche Boerse AG's XETRA trading system,

closing stock prices are determined by a day's end auction. At the closing auction, approximately 31 million Altana shares, which amounted to 44% of the true float, traded at an artificial price that was approximately 25% below the regular trading session's final price ex-dividend. We believe that this artificial price was set by buyers and sellers who unlawfully colluded to manipulate Altana's options prices.

The closing auction price of the Altana shares was used by the EUREX to calculate a new set of contract parameters for the outstanding options. Since Altana's closing stock price was artificial, its dependent option strike prices and contract multiplier were also artificial and not calculated to reflect values corresponding to the change in the value of the underlying stock. Accordingly, on May 4, 2007 and thereafter, our market making options positions were affected by the artificial closing price of May 3 and were mis-priced. As a result of this manipulation, we suffered a position loss over the ensuing trading days amounting to approximately $37 million. Other Altana market makers also suffered substantial losses as a result of this manipulation, and we have reported this manipulation to, and met with, the German Federal Financial Supervisory Authority, the BaFin, which has undertaken an official investigation of the matter.

30.    The statements referenced in ¶¶ 19, 20 and 21 were materially false and misleading because they failed to disclose that the Company's proprietary technology had failed to prevent material losses, which totaled $37 million, resulting from trading machinations in connection with the Altana Options beginning on or around May 3, 2007 and continuing on the following few trading days.  The Company did not supplement or otherwise correct this omission of material fact from the Registration Statement.

31.    The Registration Statement and Prospectus described losses that might be incurred from the Company's market making activities as follows:

**We may incur material trading losses from our market making activities.**

A substantial portion of our revenues and operating profits is derived from our trading as principal in our role as a market maker and specialist. We may incur trading losses relating to these activities since each primarily involves the purchase or sale of securities for our own account. In any period, we may incur trading losses in a significant number of securities for a variety of reasons including:

- price changes in securities;

- lack of liquidity in securities in which we have positions; and

- the required performance of our market making and specialist obligations.

These risks may limit or restrict our ability to either resell securities we purchased or to repurchase securities we sold. In addition, we may experience difficulty borrowing securities to make delivery to purchasers to whom we sold short, or lenders from whom we have borrowed. From time to time, we have large position concentrations in securities of a single issuer or issuers engaged in a specific industry or traded in a particular market. Such a concentration could result in higher trading losses than would occur if our positions and activities were less concentrated.

In our role as a market maker, we attempt to derive a profit from the difference between the prices at which we buy and sell, or sell and buy, securities. However, competitive forces often require us to match the quotes other market makers display and to hold varying amounts of securities in inventory. By having to maintain inventory positions, we are subjected to a high degree of risk. We cannot assure you that we will be able to manage such risk successfully or that we will not experience significant losses from such activities, which could have a material adverse effect on our business, financial condition and operating results.

32.     The Registration Statement and Prospectus described possible losses in connection with the Company's pricing model as follows:

**We may incur losses in our market making activities in the event of failures of our proprietary pricing model.**

The success of our market making business is substantially dependent on the accuracy of our proprietary pricing mathematical model, which continuously evaluates and monitors the risks inherent in our portfolio, assimilates market data and reevaluates our outstanding quotes each second. Our model is designed to automatically rebalance our positions throughout the trading day to manage risk exposures on our positions in options, futures and the underlying securities. In the event of a flaw in our pricing model and/or a failure in the related software, our pricing model may lead to unexpected and/or unprofitable trades, which may result in material trading losses.

33.    The statements referenced above in paragraphs ¶¶ 30 and 31 were materially false and misleading because although they mentioned losses the Company *might* incur, they failed to disclose that the Company already *had* suffered material trading losses totaling $25 million in the period ending March 31, 2007 as a result of options market machinations, and was incurring losses that totaled $37 million as a result of machinations in connection with trading of the Altana Options.

34.    Although the Company disclosed an adverse event concerning options trading activities in the Registration Statement, the Company failed to disclose the extent of these activities and the Company's inability to prevent material losses from such activities. Moreover, the Company failed to disclose material information concerning the extent of the impact of the options market activities on the Company's earnings, stating only that the Company was unable to provide details concerning such activities, that such activity typically occurs prior to corporate announcements, and that such activities had "adversely impacted" its operations:

> Unexpectedly heavy options trading activity in advance of certain corporate announcements adversely impacted our market making operations during the quarter ended March 31, 2007. While we are unable to detail the exact frequency of these announcements in a given period and their exact financial impact on our results of operations, in the quarter ended March 31, 2007, there were a greater number of surprise or unexpected announcements preceded by heavy options activity than in prior quarters. Heavy options activity typically occurs in advance of certain surprise or unexpected corporate announcements, especially where there is a leakage of information and when regularly scheduled annual or quarterly corporate announcements materially deviate from expectations.

35.    In fact, options market activity that resulted in $25 million in losses during the first quarter of 2007, the trading machinations in connection with the Altana Options and the financial impact on the Company of such activities was known or reasonably should have been

known to the Company at the time of the IPO through its proprietary technology, which continuously evaluated the Company's portfolio on a daily basis, and because earnings for the first quarter ended March 31, 2007 were known or reasonably should have been known to the Company at the time of the IPO.  Just three weeks after the IPO, in a Form 8-K filed on May 29, 2007, the Company reported that its market making segment income had decreased by 20.6% as a consequence of the options market machinations that occurred prior to certain corporate announcements during the first quarter:

> Market making segment income before income tax decreased 20.9% in the quarter ended March 31, 2007 compared with the same period in 2006, reflecting lower trading gains driven in part by heavy options activity in advance of certain corporate announcements, which had a negative impact on profits.

36.    Under applicable SEC rules and regulations governing the preparation of the Registration Statement and Prospectus, the Registration Statement was required to disclose that the Company had suffered material losses in the amount of $25 million as a result of these options market machinations, that such losses contributed to a 20.9% decrease in the Company's market making income, that the Company was suffering additional material losses which amounted to $37 million as a result of trading machinations in connection with the Altana Options, and that the Company's safeguards in place to protect itself against such activities, which were impacting the Company's continuing operations, had proven inadequate.  The Registration Statement failed to contain any such disclosures.  The Company did not supplement or otherwise correct these omissions of material fact.

**COUNT I**

**Violation of Section 11 of the Securities Act Against Defendant Interactive Brokers and Defendant Peterffy**

37.     Plaintiff repeats and realleges each and every allegation contained above.

38.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class.

39.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

40.     Interactive Brokers is the registrant for the IPO.  Interactive Brokers is responsible for the contents and dissemination of the Registration Statement and Prospectus.

41.     As issuer of the shares, Interactive Brokers is strictly liable to Plaintiff and the Class for the misstatements and omissions.

42.     Defendant Interactive Brokers did not make a reasonable investigation or possess reasonable grounds for the belief that the statements contained in the Registration Statement and the Prospectus were true and without omissions of any material facts and were not misleading.

43.     Defendant Peterffy signed the Registration Statement and served as an executive and/or director of Interactive Brokers at all times relevant to this action and is, therefore, liable for the materially false and misleading statements made in, and omissions from, the Registration Statement.  Defendant Peterffy did not make a reasonable investigation or possess reasonable grounds for the belief that each of the statements made in the Registration Statement and the Prospectus were true, did not omit any material facts and were not materially misleading.

-2-

44.     By reasons of the conduct herein alleged, Defendants violated Section 11 of the Securities Act.

45.     Plaintiff and the other members of the Class acquired Interactive Brokers shares pursuant to or traceable to the Registration Statement.

46.     Plaintiff and the Class have sustained damages and are entitled to recover those damages from Defendants.  The value of Interactive Brokers declined substantially subsequent to and due to Defendants' violations.

47.     At the times they purchased shares of Interactive Brokers Common Stock, Plaintiff and the other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to July 5, 2007.  Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff filed this Complaint.  Less than three years have elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this Complaint.

## COUNT II
### Violations of Section 12(a)(2) of the Securities Act Against Defendant Interactive Brokers

48.     Plaintiff repeats and realleges each and every allegation contained above.

49.     This Count is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2).

50.    By means of the Registration Statement and Prospectus, and by using means and instruments of transportation and communication in interstate commerce and of the mails, Defendant Interactive Brokers through the Offering sold Interactive Brokers Common Stock to Plaintiff and other members of the Class.

51.    Defendant Interactive Brokers successfully solicited these purchases motivated, at least in part, by its own financial interest.  Defendant Interactive Brokers reviewed and participated in drafting the Prospectus.  Through ensuring the successful completion of the Offering, Defendant Interactive Brokers received more than $1.1 billion.

52.    The Registration Statement, at the time it became effective, contained material misrepresentations of fact and omitted facts necessary to make the facts stated therein not misleading, as set forth above.  The facts misstated and omitted would have been material to a reasonable person reviewing the Registration Statement.

53.    Defendant Interactive Brokers owed to the purchasers of Interactive Brokers Common Stock, including Plaintiff and the other Class members, the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement and Prospectus to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein not misleading.  Defendant knew of, or in the exercise of reasonable care should have known of, the misstatements and omissions contained in the IPO materials as set forth above.

54.    Plaintiff and the other members of the Class purchased or otherwise acquired Interactive Brokers Common Stock pursuant to the defective Registration Statement and Prospectus.  Plaintiff and the members of the Class did not know, nor in the exercise of

reasonable diligence could have known, of the untruths and omissions contained in the Registration Statement and Prospectus.

56. Plaintiff, individually and representatively, hereby offers to tender to the Company those securities which Plaintiff and other Class members continue to own, on behalf of all members of the Class who continue to own such securities, in return for the consideration paid for those securities together with interest thereon.

56. By reason of the conduct alleged herein, Defendant violated Section 12(a)(2) of the Securities Act. Accordingly, Plaintiff and members of the Class who hold Interactive Brokers securities purchased in or traceable to the IPO have the right to rescind and recover the consideration paid for their Interactive Brokers securities and hereby elect to rescind and tender their Interactive Brokers securities to Defendant Interactive Brokers. Plaintiff and Class members who have sold their Interactive Brokers securities are entitled to rescessionary damages.

## COUNT III
### Violation of Section 15 of the Securities Act Against Defendant Peterffy

57. Plaintiff repeats and realleges each and every allegation made above as if fully set forth herein.

58. This Count is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o, against Defendant Peterffy. It is brought within one year after discovery of the untrue statements and omissions and within three years from the time the securities were offered to the public.

59.    Defendant Peterffy had the power through his position as a senior executive and/or director of Interactive Brokers and his relationships with other directors and senior executives of the Company to, and did, exercise control over the Company with respect to its violations of the Securities Act alleged in Count I and Count II above.  Defendant Peterffy did not make a reasonable investigation or possess reasonable grounds for the belief that the statements made in the Registration Statement and/or Prospectus were true, did not omit any material facts and were not materially misleading.  As a result, Defendant Peterffy is liable as a control person for Defendant Interactive Brokers' primary violations of the Securities Act alleged in this Complaint and is liable to the same extent as Interactive Brokers, pursuant to Section 15 of the Securities Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a)    declaring this action to be a proper class action properly maintained pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, certifying the Plaintiff as the class representative and appointing her counsel as Class Counsel;

(b)    awarding Plaintiff and the other members of the Class compensatory damages against Defendants, jointly and severally, together with interest thereon;

(c)    awarding Plaintiff and the other members of the Class rescission on Count II to the extent they still held Interactive Brokers' Common Stock, or if they sold,

awarding rescissory damages in accordance with Section 12(a)(2) of the

Securities Act from Defendant Interactive Brokers;

(d)    awarding Plaintiff and the other members of the Class their costs and expenses of

this litigation, including reasonable attorneys' fees, accountants' fees and experts'

fees and other costs and disbursements; and

(e)    awarding Plaintiff and the other members of the Class such other and further

relief as may be just and proper under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:     March 24, 2008                **ABRAHAM, FRUCHTER & TWERSKY, LLP**

Jack G. Fruchter (JF-8435)
Lawrence D. Levit (LL-9507)
Ximena R. Skovron (XS-3397)
One Penn Plaza, Suite 2805
New York, New York 10119
Telephone: (212) 279-5050
Facsimile: (212) 279-3655

**Lead Counsel for Lead Plaintiff**

## CERTIFICATION OF SEOW LIN
## IN SUPPORT OF CLASS ACTION COMPLAINT

Seow Lin ("plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the complaint prepared by counsel in the above-captioned case and has authorized the filing of a similar complaint or to otherwise add my name as a lead plaintiff in these proceedings.

2.    Plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.    During the proposed Class Period, plaintiff executed the following transactions in the stock of Interactive Brokers Group, Inc.  See Attachment A.

5.    In the past three years, plaintiff has not served, nor sought to serve, as a representative party on behalf of a class in an action filed under the federal securities laws.

6.    Plaintiff will not accept payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 30th day of January, 2008

_____
Seow Lin

ATTACHMENT A

| Date | Action | Amount | Price |
|------|--------|--------|-------|
| 05/09/2007 | Buy | 8,500 | 30.01 |
| 08/24/2007 | Sell | 1,000 | 24.7 |
| 08/24/2007 | Sell | 3,000 | 25.2 |

Jack G. Fruchter (JF-8435)
Lawrence D. Levit (LL-9507)
Ximena R. Skovron (XS-3397)
**ABRAHAM, FRUCHTER & TWERSKY, LLP**
One Penn Plaza, Suite 2805
New York, New York 10119
Telephone: (212) 279-5050
Facsimile: (212) 279-3655

**Lead Counsel for Lead Plaintiff**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ZEESHAN NAYAB, Individually and On Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>INTERACTIVE BROKERS GROUP, INC., and THOMAS PETERFFY, )<br>Defendants. ) | No. 08 CV 00242 (CM)<br><br>**ECF Case**<br><br><br>**CERTIFICATE OF SERVICE** |

The undersigned certifies that the following statement is true under penalty of perjury:

I am a member of the Bars of the State of New York and the United States District Court for the Southern District of New York. I am an associate with the firm of Abraham, Fruchter & Twersky, LLP, attorneys for Lead Plaintiff in this action. I am over the age of 18 and not a party to this action. I hereby certify under penalty of perjury that on March 24, 2008 I caused the attached AMENDED CLASS ACTION COMPLAINT as well as the AMENDED SUMMONS to be served by postage pre-paid First Class US Mail on the following:

Andrew J. Levander, Esq.
Neil A. Steiner, Esq.
Dechert LLP
30 Rockefeller Plaza
New York, NY 10112-2200

*Attorneys for Defendant Interactive Brokers Group, Inc.*

_____
Ximena R. Skovron