UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
SEOW LIN, Individually and On Behalf of All :
Others Similarly Situated,
:
       Plaintiff,              :   Civil Action No. 08 CV 00242 (CM)

  -against-             :   **ELECTRONICALLY FILED**

:
INTERACTIVE BROKERS GROUP, INC. and :
THOMAS PETERFFY,
:
       Defendants.
------------------------------------- X


## REPLY MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE AMENDED COMPLAINT

DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
(212) 698-3599 (fax)

*Attorneys for Defendants Interactive Brokers Group, Inc. and Thomas Peterffy*

13191726

## Table of Contents

Preliminary Statement ........................................................................................................... 1

Argument ............................................................................................................................ 2

POINT I
    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM ....................................... 2

    A.    The Registration Statement Accurately
          Disclosed Expected First Quarter Results ............................................................ 3

    B.    The Altana Fraud Had Not Yet Occurred And
          Could Not Have Been Disclosed In The Registration Statement ......................... 6

    C.    The Registration Statement Adequately Warned Of The Risk Of Losses ............ 7

POINT II
    PERSONS WHO HELD IB STOCK AS OF THE FILING OF THE COMPLAINT
    WERE NOT DAMAGED ............................................................................................... 9

Conclusion ......................................................................................................................... 10

## Table of Authorities

### CASES

In re Alliance Pharm. Corp. Sec. Litig.,
    279 F. Supp. 2d 171 (S.D.N.Y. 2003) .................................................................................. 7

American Pipe & Constr. Co. v. Utah,
    414 U.S. 538, 94 S. Ct. 756 (1974) .................................................................................. 10

Beecher v. Able,
    435 F. Supp. 397 (S.D.N.Y. 1975) .................................................................................. 10

In re CIT Group, Inc. Sec. Litig.,
    349 F. Supp. 2d 685 (S.D.N.Y. 2004) ............................................................................ 3, 4

Castlerock Mgmt., Ltd. v. Ultralife Batteries, Inc.,
    114 F. Supp. 2d 316 (D.N.J. 2000) .................................................................................... 6

DeMaria v. Andersen,
    318 F.3d 170 (2d Cir. 2003) ........................................................................................... 4, 5

In re Drefyus Aggressive Growth Mut. Fund Litig.,
    No. 98 Civ. 4318, 2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000) ..................................... 7

Merzin v. Provident Fin. Group, Inc.,
    311 F. Supp. 2d 674 (S.D. Ohio 2004) .............................................................................. 9

Milman v. Box Hill Sys. Corp.,
    72 F. Supp. 2d 220 (S.D.N.Y. 1999) ................................................................................. 8

Panther Partners, Inc. v. Ikanos Comme'n, Inc.,
    538 F. Supp. 2d 662 (S.D.N.Y. 2008) ..................................................................... 2, 4, 8, 9

Pierce v. Morris,
    No. 4:03-CV-026-Y, 2006 U.S. Dist. LEXIS 57366 (N.D. Tex. Aug. 16, 2006) ............ 10

Steinberg v. PRT Group, Inc.,
    88 F. Supp. 2d 294 (S.D.N.Y. 2000) ................................................................................. 8

In re Ziff-Davis Inc. Sec. Litig.,
    No. 98 Civ. 7158, 2000 U.S. Dist. LEXIS 9076 (S.D.N.Y. June 27, 2000) ...................... 5

### STATUTES AND RULES

Fed. R. Civ. P. 15 ......................................................................................................................... 10

13191726

**Preliminary Statement**

Defendants Interactive Brokers Group, Inc. and Thomas Peterffy respectfully submit this reply memorandum of law in support of their motion to dismiss the Amended Complaint.[1] The Opening Memorandum demonstrated that the Registration Statement accurately disclosed that IB's net income for the quarter ended March 31, 2007 would be $23 to $34 million less than in the corresponding quarter of the prior year. Although the exact financial impact could not be calculated, this was in part as a result of "unexpectedly heavy options activity in advance of certain corporate announcements" that "adversely affected our market making operations." It also specifically and repeatedly warned investors that "should the frequency or magnitude of these events increase, our losses will likely increase correspondingly." These disclosures were accurate, and thus, the Amended Complaint fails to state a claim.

In response, plaintiffs first argue that the Registration Statement was nevertheless misleading because it did not quantify the *precise amount* of trading losses in the first quarter that resulted from unexpectedly heavy options activity due to corporate announcements -- ignoring that the Registration Statement accurately noted that the precise quantification was not known at the time and the exact financial impact could not be calculated.

Nor is there merit to plaintiffs' second argument that the Registration Statement misleadingly touted the Company's proprietary technology, pricing models and risk management systems because they failed to prevent the Altana losses. The Registration Statement specifically warned of the potential for losses in the event of failures in the Company's proprietary pricing model and specifically warned that losses had occurred and could occur again as a result of unexpectedly heavy options trading in advance of corporate announcements. Furthermore, the

---

[1] Unless otherwise indicated, capitalized terms used herein shall have the same meaning given them in the Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint, dated April 25, 2008 ("Opening Mem.").

13191726

Altana losses had not yet occurred at the time of effectiveness of the Registration Statement or at the time of confirmation of the offer made in the IPO auction and therefore could not have been disclosed to investors in connection with their investment decisions.

Likewise, there is no merit to plaintiffs' third argument, that the risk disclosures did not sufficiently "bespeak caution" about potential losses because they used the future tense and referred to hypothetical losses. In fact, the Registration Statement properly contained detailed disclosure of the Company's actual expected financial results for the first quarter of 2007 as well as potential exposure to future losses. See Point I infra.

Plaintiffs' argument on damages fares no better. Both the Section 11 and Section 12(a)(2) claims were first made in the original Complaint filed on January 11, 2008. The Amended Complaint filed by Seow Lin on March 24, 2008 relates back to the filing of the initial Complaint. Plaintiffs cannot seek to capitalize on any price decline subsequent to the filing of the action simply by having a different proposed representative file an amended pleading after the stock price moved lower. Because IB's closing stock price on the date that the initial Complaint was filed was $2.76 *higher* than the IPO price, putative class members who continued to hold IB stock as of the filing date were not damaged and have no claim. See Point II infra.[2]

**Argument**

**POINT I**

**THE AMENDED COMPLAINT FAILS TO STATE A CLAIM**

To survive a motion to dismiss, plaintiffs must "allege plausible grounds to infer that [their] claims of misstatement or omission rise above the speculative level." Panther Partners, Inc. v. Ikanos Comme'n, Inc., 538 F. Supp. 2d 662, 667 (S.D.N.Y. 2008). Moreover, alleged

---

[2]  Plaintiffs do not dispute that, if the Section 11 and Section 12(a)(2) claims are dismissed, the Section 15 claim against Mr. Peterffy must also be dismissed.

13191726

misrepresentations in a Registration Statement are actionable only when a defendant's "representations, taken together and in context, would have mislead a reasonable investor." In re CIT Group, Inc. Sec. Litig., 349 F. Supp. 2d 685, 688 (S.D.N.Y. 2004).

The only alleged misrepresentations in the Registration Statement are (i) that defendants failed to disclose the *precise amount* of trading losses resulting from unusually heavy options trading in advance of corporate announcements in the first quarter of 2007 (even though those exact numbers were not, and are not, known) and (ii) that the Company failed to disclose losses from the Altana fraud (even though these losses had not yet been incurred).

A.    The Registration Statement Accurately Disclosed Expected First Quarter Results

The Registration Statement advised potential purchasers that, even though the Company's financial results for the first quarter of 2007 were not yet finalized, IB's net income for the quarter would be $23 to $34 million less than its net income during the first quarter of 2006, in part, because it had incurred losses as a result of unexpectedly heavy options trading in advance of certain corporate announcements, and more so than in prior periods:

> Unexpectedly heavy options activity in advance of certain corporate announcements adversely impacted our market making operations during the quarter ended March 31, 2007. While we are **unable to detail the exact frequency of these announcements in a given period and their exact financial impact on our results of operations**, in the quarter ended March 31, 2007, there were a greater number of surprise or unexpected announcements preceded by heavy options activity than in prior quarters.

Registration Statement at 11 (emphasis added).

Plaintiffs argue that IB misrepresented that it was unable to quantify the amount of such losses at the time of the IPO because (i) the IPO occurred more than a month after the end of the quarter, and the Company's technology that marked-to-market its trading positions on a daily basis should have permitted financial results to be finalized sooner and (ii) the Company finalized and disclosed its financial results for the first quarter three weeks *after* the IPO.

Plaintiffs' conclusory claim rests, however, on the implausible and baseless inference that IB's technology that allowed it to mark-to-market daily its assets and liabilities would have enabled it to obtain its auditors' review and approval of its income statement within a month after quarter end. More fundamentally still, plaintiffs illogically rely on the Company's mark-to-market technology to speculate that IB could somehow have precisely quantified the amount of trading losses incurred as a result of an unknown number options trades at unknown prices in advance of corporate announcements.[3] These are the types of speculative allegations and pleading by hindsight that are insufficient to state a Securities Act claim. See, e.g., CIT Group, 349 F. Supp. 2d at 688; see also Panther Partners, 538 F. Supp. 2d at 668; Opening Mem. at 12.

Moreover, even if IB had been able to quantify the first quarter trading losses resulting from unexpectedly heavy options activity in advance of corporate announcements at the time of the IPO, such additional information would not have altered the total mix of information available to investors in light of the accurate guidance in the Registration Statement as to the amount of the Company's expected net income for the quarter and the explicit disclosures that the quarter's net income had been adversely impacted by the greater frequency of such losses than in prior periods. See DeMaria v. Andersen, 318 F.3d 170, 181 (2d Cir. 2003); see also Opening Mem. at 11.

---

[3] The Amended Complaint cites periodical articles to estimate the financial impact at $25 million, but those estimates are purely speculative because, as disclosed in the Registration Statement, "we are unable to detail the exact frequency of these announcements in a given period and their exact financial impact on our results of operations." Nevertheless, even accepting plaintiffs' speculative calculation as true solely for purposes of this motion, the alleged $25 million loss falls on the *low* end of the Company's estimated range of $23 to $34 million for the total projected negative change in the results for the first quarter of 2007 (which, of course, depended on various factors including the losses from options trading in advance of corporate announcements).

Plaintiffs reliance on In re Ziff-Davis Inc. Sec. Litig., No. 98 Civ. 7158, 2000 U.S. Dist. LEXIS 9076 (S.D.N.Y. June 27, 2000), for the proposition that the Registration Statement was required to quantify the amount of trading losses from unusually heavy options activity during the first quarter of 2007 is misplaced. See Opp. Mem. at 17. There, the Court declined to dismiss a Section 11 claim where the Registration Statement attributed the Company's lower advertising revenues "principally [to] factors affecting the computer technology industry generally," while the true cause of the revenue decline was allegedly increased competition and loss of market share to those competitors. See Ziff-Davis, 2000 U.S. Dist. LEXIS 9076, at *6. Here, by contrast, the Registration Statement accurately disclosed both that IB had incurred trading losses in its market making operations and that trading before corporate announcements contributed to those losses.

The Second Circuit's decision in DeMaria is directly on point. The Second Circuit affirmed dismissal of the complaint because the prospectus's specific disclosures about certain quarterly losses accurately portrayed the Company's future prospects, even though it did not specifically mention a $6 million first quarter loss. As the Court explained:

> It can hardly be said that, by having not been explicitly told of the company's actual first quarter losses, a reasonable investor would have been misled about the nature of [defendant's] securities. [Defendant's] prospectus is replete with warnings and explanations of risks associated with the company's past financial history and future expectations.

DeMaria, 318 F.3d at 182 (internal citation and quotation omitted).

Plaintiffs' attempt to distinguish DeMaria on the ground that the company had issued a corrected prospectus showing the $6 million loss ignores the Second Circuit's holding. The company had issued two registration statements simultaneously -- an electronic version that omitted showing a $6 million loss in the first quarter of 1999 and incorrectly identified net losses as revenues, and a paper copy that contained the correct information. The Second Circuit held

5

13191726

that, in light of the accurate loss information through the year end 1998 and the stated expectation of future losses in the electronic version of the prospectus, *neither the electronic version standing alone* nor the two versions taken together were materially misleading. See id. at 181-82. Here, too, IB's Registration Statement accurately disclosed the first quarter results and that those results contained some amount of trading losses as a result of unexpectedly heavy options trading in advance of corporate announcements, and the expectation that such losses could occur in the future. Nothing more was required.

B.  The Altana Fraud Had Not Yet Occurred And
    Could Not Have Been Disclosed In The Registration Statement

Plaintiffs cannot not state a claim arising from the Company's Altana losses because those losses did not occur until *after* the IPO and thus no disclosure could have been made. See Castlerock Mgmt., Ltd. v. Ultralife Batteries, Inc., 114 F. Supp. 2d 316, 323 n.5 (D.N.J. 2000) ("[S]tatements and facts can be neither fraudulently nor negligently omitted if they are unknown or unknowable at the time the Offering Documents came into effect and were disseminated."); see also Opening Mem. at 12-13.

Without any support, plaintiffs erroneously assert in the fact section of their Opposition Memorandum that the losses from the Altana fraud occurred "on May 3, 2007, the day before the IPO was conducted," but they later drop this assertion from their argument. Instead, plaintiffs argue that the Registration Statement failed to disclose "a significant and systematic impairment" to IB's technology, pricing models and risk management systems, an alleged "software flaw that could not prevent losses caused by strategic, high volume trading in options." Opp. Mem. at 19.

The Company simply did not state that its technology would enable it to prevent the Altana losses. To the contrary, the Registration Statement stated that the Company's success "is dependent on the accuracy of our proprietary trading model [and in] the event of a flaw . . . our

pricing model may lead to . . . material trading losses." Registration Statement at 24. It also plainly and repeatedly warned that the Company is "exposed to losses due to lack of perfect information," and that as a result of trading with others who have different information "we may accumulate unfavorable positions preceding large price movements in companies," and further that "[s]hould the frequency or magnitude of these events increase, our losses will likely increase correspondingly." Id.; see also id. at 11-12. Elsewhere, the Registration Statement explained that "[i]f the behavior of price movements of individual securities diverges substantially from what their historical behavior would predict, we might incur trading losses." Id. at 86. These disclosures fully warned investors against precisely the type of loss incurred by the Company as a result of the Altana losses.

Nor is there merit to plaintiffs' suggestion that defendants had a duty under Section 12(a)(2) to update the prospectus to disclose the Altana losses between the end of the IPO auction and the confirmation of IPO orders on the evening of May 3 and the settlement of those purchases on May 9. See Opp. Mem. at 19 n.5. Any duty to update the prospectus ceased once plaintiffs' commitment to purchase stock was binding -- when plaintiffs' offers to purchase stock in the Dutch auction were accepted by the Company after the close of the market on May 3, 2007 -- not when the transaction settled on May 9, 2007. See In re Alliance Pharm. Corp. Sec. Litig., 279 F. Supp. 2d 171, 185 (S.D.N.Y. 2003); In re Drefyus Aggressive Growth Mut. Fund Litig., No. 98 Civ. 4318, 2000 WL 1357509, at *7 (S.D.N.Y. Sept. 20, 2000).

C.  The Registration Statement Adequately Warned Of The Risk Of Losses

The Registration Statement adequately warned investors of the risk that the Company would incur losses as a result of unexpectedly heavy options trading in advance of corporate announcements the future, and thus the bespeaks caution doctrine mandates dismissal. See Opening Mem. at 14. Plaintiffs argue against application of the bespeaks caution doctrine

7

13191726

because the risk disclosures use the future tense, when such losses had allegedly already occurred. See Opp. Mem. at 19-22.

Plaintiffs' argument again disregards the actual disclosures in the Registration Statement itself. Not only did the Registration Statement disclose that the Company had already incurred actual losses as a result of unexpectedly heavy options trading in advance of corporate announcements during the 2007 first quarter and that those losses had occurred more frequently than in prior periods (see Registration Statement at 11-12), it also warned investors that "[w]e *are exposed* to losses due to lack of perfect information" and that should the frequency or magnitude of trading with others who have different information increase, "our losses *will likely increase* correspondingly." Id. at 24 (emphasis added). Furthermore, as the Court held in Steinberg v. PRT Group, Inc., 88 F. Supp. 2d 294 (S.D.N.Y. 2000) -- a case cited in the Opening Memorandum but ignored by plaintiffs -- the use of the future tense in certain of the risk disclosures does not misleadingly imply that the negative events were not currently occurring.

Plaintiffs erroneously rely on Milman v. Box Hill Sys. Corp., 72 F. Supp. 2d 220 (S.D.N.Y. 1999), for the proposition that the bespeaks caution doctrine does not apply where the company is alleged to have actual knowledge of the risk factor being disclosed. See Opp. Mem. at 21. In that case, the Court permitted certain Securities Act claims to proceed where the complaint alleged that the company knew but concealed that its new product line was struggling. But it dismissed other Securities Act claims based on the alleged failure to disclose that the company had lowered its pricing of the new product because the registration statement specifically disclosed the risks of competition and price pressures. See Milman, 72 F. Supp. 2d at 232. Similarly, plaintiffs inexplicably cite Panther Partners, a case that squarely rejects their argument. There, the Court *dismissed* the Securities Act claims because "[g]iven the risk

disclosures actually made, it is clear that [the Company] sufficiently notified the reasonable investor that it was not a defect-free company." Panther Partners, 538 F. Supp. 2d at 673. Because no reasonable investor reading the risk disclosures and cautionary language in the Registration Statement could have been misled into thinking that IB was immune from adverse impacts due to options market manipulations, the claims should be dismissed.

## POINT II

### PERSONS WHO HELD IB STOCK AS OF THE FILING OF THE COMPLAINT WERE NOT DAMAGED

The claims of plaintiffs (i) who sold their stock at a profit prior to this litigation or (ii) who continued to own IB stock when the initial Complaint in this action was filed should be dismissed for the independent reason that those persons were not damaged because the stock price on the date of the initial Complaint was higher than the IPO price. See Opening Mem. at 15-16. Plaintiffs do not dispute that purchasers who sold their IB stock at a profit cannot maintain a claim.

Plaintiffs nevertheless argue that those who continued to own their stock after this action was commenced have a claim for damages because IB's stock price on the date of the Amended Complaint was less than the IPO price. The only case cited by plaintiffs to support their argument, Merzin v. Provident Fin. Group, Inc., 311 F. Supp. 2d 674 (S.D. Ohio 2004), involved Section 11 claims that were first made in the amended complaint, and none of the named plaintiffs in the earlier complaints had standing to allege a Section 11 claim. For that reason, the Court held that the date of filing of the amended complaint that first asserted the Section 11 claims was the operative date for measuring damages.

Here, by contrast, the Section 11 and Section 12(a)(2) claims were actually first made in the initial Complaint, filed on January 11, 2008. Thus, the claims in the Amended Complaint

13191726

relate back to the filing of that initial Complaint. See Fed. R. Civ. P. 15; American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 552-53, 94 S. Ct. 756, 765-66 (1974). And it is well-settled that the date of the initial Complaint is the applicable date for measuring damages when the amended complaint relates back to an earlier pleading. See Beecher v. Able, 435 F. Supp. 397, 402 (S.D.N.Y. 1975) ("In the present cases, the first date seems the most logical benchmark for measuring damages under § 11(e). In future cases the prospect of selection of the filing day of the first suit may well reduce date-shopping subsequent to the first filing and so far as possible limit the multiplicity of identical suits. Further, the certainty of the date of the first suit may shorten future damage trials, since evidence of value can be limited to one particular day."); see also Pierce v. Morris, No. 4:03-CV-026-Y, 2006 U.S. Dist. LEXIS 57366, 20-18 (N.D. Tex. Aug. 16, 2006). Because persons who continued to own IB stock as of the filing of the initial Complaint do not have a cognizable claim for damages, their claims should be dismissed.

## Conclusion

For the foregoing reasons and those in the Opening Memorandum, Defendants Interactive Brokers Group, Inc. and Thomas Peterffy respectfully request that the Court dismiss the Amended Complaint in its entirety, with prejudice.

Dated: New York, New York.
May 23, 2008

DECHERT LLP

By: _____
Andrew J. Levander
Neil A. Steiner
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500 (tel) (212) 698-3599 (fax)
andrew.levander@dechert.com
*Attorneys for Defendants Interactive Brokers Group, Inc. and Thomas Peterffy*

13191726